UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN L. KIPLINGER,

    Plaintiff,

v.

SELENE FINANCE, LP and
U.S. BANK TRUST, N.A.,

    Defendants.

Case No. 1:15-cv-105

Hon. Ray Kent

_____

U.S. BANK TRUST, N.A., by its
servicer, SELENE FINANCE, L.P.

    Counter-Plaintiff,

v.

DARREN L. KIPLINGER,

    Counter-Defendant.

_____

U.S. BANK TRUST, N.A., by its
servicer, SELENE FINANCE, L.P.

    Third-party Plaintiff,

v.

PENNY T. KIPLINGER,

    Third-party Defendant.
_____/

**OPINION**

This action involves claims arising from a mortgage foreclosure. Plaintiff, Darren L. Kiplinger, executed a promissory note with non-party Clark Financial Group in the amount of $203,162.00, which he secured by mortgaging certain property in Charlotte, Michigan. The property was sold at a sheriff's sale after Kiplinger defaulted on his obligations under the note and mortgage. At the time of the foreclosure, defendant U.S. Bank Trust, N.A. ("U.S. Bank")[1] was the assignee of the mortgage and defendant Selene Finance, LP ("Selene Finance") was the servicer of the loan. Plaintiff filed this action in the Eaton County Circuit Court, alleging four counts against defendants and seeking injunctive relief and monetary damages. Defendant removed this action to this Court as a diversity action pursuant to 28 U.S.C. §§ 1441(a) and 1332. *See* Notice of Removal (docket no. 1). After removal, defendants' filed a counterclaim against defendant for a deficiency owed to defendants on the mortgage loan in the amount of $94,530.28 plus interest, costs and attorney's fees. Defendants also filed a third-party complaint for the deficiency against Penny Kiplinger, the co-signer of the note and mortgage. This matter is now before the Court on "Defendant/Counter-Plaintiff's Motion for summary judgment and dismissal" (docket no. 27).

**I.     Background**

Plaintiff set forth the following allegations in his complaint. He obtained a mortgage from Clark Financial Group for certain real estate in located at 1327 Brookfield Road, Charlotte, Michigan. Compl. at ¶ 6 (docket no. 1, PageID.19-33). Plaintiff did not allege any specific information about the mortgage or the underlying note. The record reflects that plaintiff and his

---

[1] Defendant U.S. Bank is named in the complaint as "U.S. Bank Trust, N.A., not in its individual capacity but solely as Trustee for SRMOF II 2012-1 Trust".

wife, Penny T. Kiplinger, executed a mortgage in favor of Clark Financial Group on May 24, 2007, to secure a promissory note in the amount of $203,162.00. *See* Mortgage (docket no. 27-3). The note was payable in monthly installments of $1,317.70 with a maturity date of June 1, 2037. *See* Note (docket no. 27-2).

On September 9, 2013, servicing rights were assigned to defendant Selene Finance. Compl. at ¶ 8. *See* Servicing transfer information (docket no. 32, PageID.312).[2] At that time, the balance due on the loan was $193,513,15. *See* Servicing transfer information at PageID.312. Plaintiff alleged that "[o]n or about October 2013" plaintiff applied for mortgage assistance with Selene Finance, which processed plaintiff's request for assistance "over the next several months," during which time plaintiff updated his request. Compl. at ¶¶ 9-12. Plaintiff alleged that "[o]n or about April of 2014" defendant Selene Finance approved a modification, with the modified agreement requiring a payment of $1,350.00, which was 48% of plaintiff's gross monthly income. *Id.* at ¶ 13. Plaintiff spoke to Selene Finance "several times thereafter" and requested that it "follow HAMP [Home Affordable Modification Program] guidelines and reduce his payment to 31% of his monthly gross income." *Id.* at ¶ 14. Plaintiff alleged that while attempting to get plaintiff a HAMP loan modification, Selene Finance initiated foreclosure proceedings which culminated in the sale of the property on July 24, 2014. *Id.* at ¶ 15.

Plaintiff has set forth four counts in his complaint. In Count I, entitled "Setting aside the foreclosure sale," plaintiff claims that the mortgage foreclosure sale should be set aside because Selene Finance acted negligently and in bad faith with respect to the HAMP loan modification. *Id.*

---

[2] This document, "Exhibit No. 1" of the complaint is illegible. Compl. at PageID.35. Defendant has submitted a legible copy of this document. *See* Supplemental Copy of Exhibit 1 of the Plaintiff's Complaint (docket no. 32 at PageID.312).

3

at ¶¶ 16-19. In Count II, entitled "Action pursuant to FHA servicing guidelines at 24 CFR § 203.500, 203.501 and 203.605 and US Department of Housing and Urban Development Mortgage Letter 2009-23, 'Guidelines for FHA - HAMP Loss Mitigation'", plaintiff claims that he is entitled to injunctive relief and monetary damages for violation of these regulations. *Id.* at ¶¶ 20-28. In Count III, entitled "Negligence," plaintiff claims that he is entitled to injunctive relief and monetary damages because Selene Finance breached its duty of care by not properly evaluating a loan modification request, causing plaintiff to suffer the loss of his house. *Id.* at ¶¶ 29-35. Finally, in Count IV, entitled "Action pursuant to Real Estate Settlement Procedures Act (RESPA) Section 6F, 12 USC 2605(f), for violations of 12 CFR 1024.38 and 1024.41", plaintiff claims that he is entitled to injunctive relief and monetary damages for violations of these regulations. *Id.* at ¶¶ 36-51.

For its part, defendant U.S. Bank, by its servicer Selene Finance, filed a counterclaim against plaintiff and his wife for the balance due on the promissory note. *See* Counterclaim (docket no. 7). Counter-plaintiff and third-party plaintiff U.S. Bank alleged: that at the time of the sheriff's sale, $254,530.28 remained due on the note; that the successful bid at the sheriff's sale was entered by U.S. Bank in the amount of $160,00.00; that the sale of the property resulted in a deficiency owed to U.S. Bank in the amount of $94,530.28; and that plaintiff and Penny T. Kiplinger owe this amount plus post-filing interest, costs and allowable attorney fees. *Id.* at ¶¶ 1-16.[3]

This matter is now before the Court on a combined motion filed by defendants U.S. Bank and Selene Finance for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) "and/or" for summary judgment pursuant to Fed. R. Civ. P. 56(c). The Court construes this motion, which is based upon a number of documents outside of the pleadings, as one for summary judgment

---

[3] The Court notes that the final paragraph of the counter-claim states the amount as $94,530.27.

brought pursuant to Fed. R. Civ. P. 56.[4] This motion is limited to plaintiff's complaint and does not address the claims brought by U.S. Bank and Selene Finance against the counter-defendant or third-party defendant.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

---

[4] The Court notes that defendants do not raise any independent arguments under Fed. R. Civ. P. 12(c) ("Motion for judgment on the pleadings"). Such a motion is improper at this late stage of the litigation. *See* Fed. R. Civ. P. 12(c) ("[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings").

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Plaintiff's response

Defendants submitted numerous exhibits in support of their motion for summary judgment. *See* Exhibits (docket nos. 27-2, 27-3, 27-4, 27-5, 27-6, 27-7, 27-8 and 27-9). Plaintiff did not provide any documents in opposition to defendant's motion other than an article from January 17, 2013 entitled "CFPB rules establish strong protections for homeowners facing foreclosure" (docket no. 28-1) and copies of unanswered (and untimely) discovery requests served on July 6, 2015 (docket no. 28-2). *See* Case Management Order (docket no. 18) (written discovery requests must be served no later than 30 days before discovery closed on July 8, 2015).

Plaintiff is apparently relying on the "verified complaint" which he originally filed in the state court. *See* Verification at PageID.33. A properly verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). However, the complaint in this instance does not have the same force and effect as an affidavit, because the verification is insufficient because it lacks personal knowledge, i.e., "I have read the foregoing Complaint and that the facts contained therein are true and accurate to the best of my knowledge, *information and belief.*" *See* Verification (emphasis added). Consistent with Fed. Rules Civ. Proc. 56(c)(4) and its predecessor, courts have applied a strict personal knowledge requirement to affidavits or declarations submitted in summary judgment proceedings. *See, e.g., Totman v. Louisville Jefferson County Metro Government*, 391 Fed.Appx. 454, 464 (6th Cir. 2010) (to constitute evidence sufficient to support or oppose a motion

6

for summary judgment, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated;" thus, a complaint which included a verification stating facts that are true and correct to the best of the affiant's "knowledge and belief" indicated that the allegations of the complaint went beyond the plaintiff's personal knowledge, that the allegations extended to matters within the plaintiff's "beliefs," and that the plaintiff's "beliefs" did not meet the evidentiary standard set forth in Fed. Rules Civ. Proc. 56(e)(1) (predecessor to Fed. Rules Civ. Proc. 56(c)(4)); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir.2007) (holding that the affiant's "statement. . . based upon his 'belief'. . . did not demonstrate the personal knowledge required by Fed.R.Civ.P. 56(e)"); *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (the "personal knowledge requirement [of Rule 56] prevents statements in affidavits that are based, in part, 'upon information and belief' - instead of only knowledge - from raising genuine issues of fact sufficient to defeat summary judgment"); *Dellacava v. Painters Pension Fund of Westchester and Putnam Counties*, 851 F.2d 22, 27 (2d Cir.1988) (statements in an affidavit made "upon information and belief" have "no probative value and may not be considered in a motion for summary judgment"). Accordingly, for purposes of addressing defendants' motion for summary judgment, the statements set forth in plaintiff's complaint do not have the same force and effect as an affidavit.

    **IV.**    **Discussion**

    **A.**    **Count I (Set aside foreclosure sale)**

Plaintiff filed this action on January 2, 2015, more than five months after the mortgage was foreclosed at a sheriff's sale on July 24, 2014. *See* Notice of Removal at PageID.2 and 18. In this count, plaintiff asks the Court to set aside the mortgage foreclosure because

defendant Selene Finance did not properly review the previous mortgage loan for a modification under HAMP. Plaintiff's contention is without merit. "HAMP is a federal program enacted pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 *et seq.*, that gives lenders incentives to offer borrowers . . . loan modifications with more favorable terms." *Olson v. Merrill Lynch Credit Corp.*, 576 Fed Appx. 506, 511 (6th Cir. 2014). Because " 'HAMP and its enabling statute do not contain a federal right of action,' " *id.* quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir.2012), "a plaintiff can only bring a HAMP-related claim if state law provides one," *id.* at 511-12, citing *Mik v. Fed. Home Loan Mortgage Corporation*, 743 F.3d 149, 166-67 (6th Cir.2014). The Sixth Circuit has held that "HAMP does not create a private right of action" and "that Michigan courts have not recognized that the HAMP regulations impose a duty of care by servicers to borrowers." *Rush v. Freddie Mac*, 792 F.3d 600, 605 (6th Cir. 2015). Accordingly, defendants are entitled to summary judgment on this claim.

      **B.**    **Count II (Action pursuant to FHA servicing guidelines at 24 CFR § 203.500, 203.501 and 203.605)**

Plaintiff has alleged that defendants violated three federal servicing guidelines, 24 C.F.R. § 203.500, 24 C.F.R. § 203.501 and 24 C.F.R. § 203.605. Plaintiff has not set forth the substance of these regulations nor has he addressed this issue in his response brief. "Servicing practices prescribed by the Department of Housing and Urban Development [HUD] for lenders servicing government insured mortgages are found at 24 C.F.R. § 203.500 through 203.606." *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 910 (E.D. Mich. 2012). "[T]he Sixth Circuit has held that there is no private right of action for breach of HUD's mortgage servicing policies." *Id.* at 911. *See Federal National Mortgage Association v. LeCrone*, 868 F.2d 190, 193

8

(6th Cir. 1989) ("no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies"). Accordingly, defendants are entitled to summary judgment on this claim.

### C. Count III (Negligence)

Plaintiff contends that Selene Finance was negligent because it breached a duty owed to him under the federal regulations to evaluate his application for a loan modification and that its negligent failure to do so caused him injury. "To establish a prima facie case of negligence, a plaintiff must be able to prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Haliw v. Sterling Heights*, 464 Mich. 297, 309-10, 627 N.W.2d 581 (2001). Plaintiff cannot bring a negligence claim, based on an alleged violation of HAMP, because he cannot establish that Selene Finance breached a duty owed to him. As discussed, Michigan Courts do not recognize that the HAMP regulations created a duty of care between servicers and borrowers. *See Rush*, 792 F.3d at 605. No such negligence claim exists because under Michigan law, "the duties established by the mortgage contract govern the relationship between the parties . . . a homeowner who has defaulted may not simply waive the contract and sue in negligence." *Id. See also*, *Clark v. Ocwen Loan Servicing, LLC*, No. 1:15-cv-659, 2015 WL 6159447 (W.D. Mich. Oct. 20, 2015) (plaintiff failed to state a negligence claim against a loan servicer because he did not satisfy the first element of a negligence claim, specifically plaintiff could not identify "any case in which a Michigan court has recognized that federal regulations regarding loan modification impose a duty of care on the servicer or holder of the mortgage"). *See also, Deming-Anderson v. PNC Mortgage*, -- F. Supp.3d --, No. 15-cv-11688, 2015 WL 4724805 at *5 (E.D. Mich. Aug. 10, 2015) ("Michigan law does not impose a legal duty between a lender and a

9

borrower, so there can be no breach of a duty for purposes of stating a negligence claim") (internal quotation marks omitted). Accordingly, defendants are entitled to summary judgment on this claim.

### D. Count IV (RESPA claim)

Plaintiff contends that defendants violated RESPA, 12 U.S.C. § 2605, by failing to give him a loan modification under 12 C.F.R. §§ 1024.38(2), 1024.41(d), and 1024.41(f)(2). *See* 12 U.S.C. § 2605(f)(1) (providing in pertinent part that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure").

#### 1. Claim under 12 C.F.R. § 1024.38

Plaintiff alleged "[t]hat pursuant to 12 CFR 1024.38(2), where Defendant participated in the HAMP program which required that a Sheriff's sale be suspended if loan modification documents are submitted 7 days before the sale takes, Defendant, Selene, was required to maintain policies and procedures in conformance with the HAMP program." Compl. at ¶ 48. As an initial matter, there is no regulation numbered 12 C.F.R. § 1024.38(2). Presumably, plaintiff is claiming that the servicer of his mortgage, defendant Selene Finance, did not comply with some aspect of 12 C.F.R. § 1024.38, *see* 12 C.F.R. § 1024.38(a) (stating that "[a] servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b) of this section"). Plaintiff's claim fails because an individual has no right of action under 12 C.F.R. § 1024.38. *See Smith v. Nationstar Mortgage*, No. 15-13019, 2015 WL 7180473 at *4 (E.D. Mich. Nov. 16, 2015) ("violations of § 1024.38 cannot support a private action"); *Deming-Anderson*, 2015 WL 4724805 at *4 (rejecting plaintiff's claim that the defendants violated 12 C.F.R. 1024.38(b)(2) by failing to maintain policies and procedures in accordance with HAMP guidelines). Accordingly, defendants are entitled to summary judgment on this claim.

## 2. Claims under 12 C.F.R. § 1024.41

Plaintiff also seeks relief under 12 C.F.R. § 1024.41. This regulation, also known as Regulation X, became effective on January 10, 2014. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024) (eff. date Jan. 10, 2014). Plaintiff is authorized to enforce this regulatory provision under RESPA. *See* 12 C.F.R. § 1024.41(a) ("[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))"). Plaintiff has alleged two claims arising from this regulation.

First, plaintiff alleged that Selene Finance "violated 12 CFR 1024.41(d) by at least implicitly denying Plaintiff a loan modification without providing in writing the specific reasons for the denial, and for which loss mitigation options he was evaluated for." Compl. at ¶ 46. The regulation at issue provides as follows:

> If a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

12 C.F.R. § 1024.41(d).

Second, plaintiff alleged that Selene Finance violated 12 C.F.R. § 1024.41(f)(2), "by noticing Plaintiff's home for foreclosure on June 22, 2014, despite the fact Plaintiff had submitted several complete loss mitigation packages on or about October 2013, prior to the foreclosure notice being posted, where Plaintiff was never sent a proper written notice in response to his modification request stating he was ineligible for a loan modification, and where Plaintiff never rejected or failed

to perform under a properly evaluated loss mitigation option at 31% of his gross monthly income."

Compl. at ¶ 47.

The regulation at issue, 12 C.F.R. § 1024.41(f) provides in pertinent part as follows:

(1) Pre-foreclosure review period. A servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i) A borrower's mortgage loan obligation is more than 120 days delinquent; (ii) The foreclosure is based on a borrower's violation of a due-on-sale clause; or (iii) The servicer is joining the foreclosure action of a subordinate lienholder.

(2) Application received before foreclosure referral. If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

(i) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (ii) The borrower rejects all loss mitigation options offered by the servicer; or (iii) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(f).

Here, plaintiff cannot maintain actions under either 12 C.F.R. § 1024.41(d) or 12 C.F.R. § 1024.41(f)(2) because the procedure created by these regulations was not in effect when plaintiff allegedly applied for a loan modification "on or about October 2013." Compl. at ¶ 10. It appears that Selene Finance responded to this application in a letter dated December 23, 2013, in which it offered plaintiff a Forbearance Agreement "as the first step to retain your home." *See* Letter and Forbearance Agreement (docket no. 27-7). Both plaintiff's alleged initial application and Selene

Finance's response occurred in 2013, before the January 10, 2014 effective date of 12 C.F.R. § 1024.41.

In *Campbell v. Nationstar Mortgage*, 611 Fed. Appx. 288, 298 (6th Cir. 2015), the Sixth Circuit found that 12 C.F.R. § 1024.41 did not apply retroactively to a mortgage foreclosure sale which occurred on July 11, 2013, observing that such a retroactive application would "increase a party's liability for past conduct, [and] impose new duties with respect to transactions already completed." Here, although plaintiff's mortgage foreclosure sale occurred after the effective date of 12 C.F.R. § 1024.41, his claims arise from Selene Finance's alleged failure to properly evaluate a mortgage assistance application which he submitted *before* the regulation's effective date. "[I]n order for a borrower to avail himself or herself of Regulation X's protections, the borrower's application must be received by the servicer after the Effective Date." *Lage v. Ocwen Loan Servicing LLC*, -- F. Supp.3d ---, No. 14-CV-81522, 2015 WL 7294854 at *8 (S.D. Fla. Nov. 19, 2015). As the Court explained in *Lage*:

> By imposing an effective date of January 10, 2014, the CFPB intended to institute a clear starting point with respect to when a servicer's obligations under Regulation X would be triggered. To conclude otherwise, as Plaintiffs suggest, would result in an unmanageable regulatory regime. Plaintiffs assert that an application submitted prior to the Effective Date that becomes either complete or "facially complete" at some point subsequent to January 10, 2014, triggers the servicer's obligations under Regulation X. Various obligations are, in fact, triggered after the application is rendered either complete or facially complete, such as the duty to properly evaluate the application and the servicer's prohibition on the sale of the property, after the initial submission of an application. *See* 12 C.F.R. § 1024.41(c), (g). *However, the submission of the application on or after January 10, 2014 is a prerequisite to obtaining these protections set forth in 12 C.F.R. § 1024.41. A borrower may not essentially sidestep the Effective Date by claiming that the application, while submitted prior to the Effective Date, nevertheless requires a servicer to act under Regulation X at some indeterminate later date, when the borrower's application becomes complete.*

*Id.*, 2015 WL 7294854 at *10 (emphasis added). Plaintiff cannot maintain an action against defendants for alleged violations of 12 C.F.R. § 1024.41 which arise from a mortgage assistance application which he submitted before the effective date of the regulation. Accordingly, defendants are entitled to summary judgment on these claims.

### V. Conclusion

For these reasons, the motion for summary judgment filed by defendants/counter-plaintiffs U.S. Bank and Selene Finance (docket no. 27) is **GRANTED** as to all of plaintiff's claims. This matter will proceed to trial on defendants/counter-plaintiffs' counterclaim and third-party complaint against Darren L. Kiplinger and Penny Kiplinger for the deficiency on the loan.

Dated: December 18, 2015           /s/ Ray Kent
                                   RAY KENT
                                   United States Magistrate Judge